UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ANDREA COLLETTE MEIERS,

       Plaintiff,

  v.                                          19-CV-71
                                              DECISION & ORDER
COMMISSIONER OF SOCIAL
SECURITY,
           Defendant.

---

On June 24, 2019, the plaintiff, Andrea Collette Meiers, brought this action under the Social Security Act ("the Act"). She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Docket Item 1. On September 23, 2019, Meiers moved for judgment on the pleadings, Docket Item 11; on January 13, 2020, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 15; and on February 3. 2020, Meiers responded to the Commissioner's motion and replied in further support of her motion. Docket Item 16.

For the reasons stated below, this Court grants Meiers's motion in part and denies the Commissioner's cross-motion.[1]

---

[1] This Court assumes familiarity with the underlying facts, the procedural history, and the ALJ's decision and will refer only to the facts necessary to explain its decision.

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## **DISCUSSION**

### I.   **ALLEGATIONS**

Meiers argues that the ALJ erred in two ways. Docket Item 11. First, she argues that the ALJ improperly relied on the stale opinions of two consulting medical providers. *Id.* at 15-19. Second, she argues that the ALJ's physical and mental residual functional

capacity ("RFC") findings were not supported by substantial evidence. *Id.* at 19-23. This Court agrees that the ALJ erred and, because that error was to Meiers's prejudice, remands the matter to the Commissioner.

## II. ANALYSIS

### A. Stale Opinion

Meiers first argues that the ALJ erred in giving "great weight" to the opinions of two consulting medical examiners, internist Donna Miller, D.O., and psychologist Janine Ippolito, Psy.D. More specifically, Meiers says that those opinions were stale by the time the ALJ rendered his decision. This Court agrees.

"A stale medical opinion does not constitute substantial evidence to support an ALJ's findings." *Majdandzic v. Comm'r of Soc. Sec.*, 2018 WL 5112273, at *3 (W.D.N.Y. Oct. 19, 2018). But time alone does not make an opinion stale: For a medical opinion to be stale, there must be a significant period of time between the date of the opinion and the hearing date, and there also must be subsequent treatment notes indicating that the "claimant's condition . . . deteriorated" over that period. *Whitehurst v. Berryhill*, 2018 WL 3868721, at *4, *5 (W.D.N.Y. Aug. 14, 2018). Stated more simply, the "mere passage of time does not render an opinion stale," *id.*, but "significant developments" in an individual's medical history after the examination might, *Davis v. Berryhill*, 2018 WL 1250019, at *3 (W.D.N.Y. Mar. 11, 2018).

#### 1. Physical RFC

In October 2015, Dr. Miller opined that Meiers had only mild limitations in "repetitive lifting, bending, carrying, pushing, and pulling[,] and prolonged standing and

3

walking." *See* Docket Item 7 at 387.  The ALJ gave Dr. Miller's opinion "great weight," observing that Dr. Miller "[was] familiar with the [Social Security r]egulations, . . . [and had] personally examined [Meiers]."  Docket Item 7 at 29.  The ALJ also noted that Dr. Miller's opinion was "generally consistent with record as a whole."  *Id.*

But Meiers underwent surgery after Dr. Miller's examination, and the ALJ did not consider whether that might have rendered Dr. Miller's opinion stale by the time the ALJ rendered his opinion a few years later.  *See Pagano v. Comm'r of Soc. Sec.*, 2017 WL 4276653, at *5 (W.D.N.Y. Sep. 27, 2017) ("A stale medical opinion, like one that is rendered before a surgery, is not substantial evidence to support an ALJ's finding."); *Girolamo v. Colvin*, 2014 WL 2207993, at *7-8 (W.D.N.Y. May 28, 2014) (finding that ALJ erred by giving great weight to medical opinions rendered before the claimant's second surgery).  That was error—especially because other evidence in the record shows that Dr. Miller's opinion indeed had become stale.

In January 2016, Matthew Landfried, M.D., performed an arthroscopy to relieve severe pain in Meiers's left shoulder.  *See* Docket Item 7 at 775.  For the next several months, Meiers was treated by Frederick Wagner, Registered Physician Assistant – Certified ("RPA-C"), who noted that Meiers continued to exhibit disabling symptoms, such as "limited [range of motion] with discomfort" in her left shoulder on January 29, 2016; "diminished" strength on February 4, 2016; and "tenderness over the left shoulder" on April 7, 2016.  *Id.* at 518, 527, and 531.

 In the summer of 2016, RPA-C Wagner administered a subacromial space injection in an effort to reduce the persistent pain in Meiers's left shoulder. *Id.* at 545. Later that year, Meiers followed up with Dr. Landfried, who also observed diminished

4

strength and limited range of motion.  *Id.*at 552.  In November 2016, Dr. Landfried opined that Meiers "[was] in a lot of pain" and receiving "no relief" from medication or injections.  *Id.* at 553.  And by May 2017, RPA-C Wagner noted that for about six months Meiers had experienced difficulty "holding objects" because of "shooting pain" that "radiate[d] down her [left] arm."  *Id.* at 566.

Despite Dr. Landfried's longstanding treatment relationship with Meiers, and despite the consistency between Dr. Landfried's opinions and those of RPA-C Wagner, the ALJ gave "little weight" to Dr. Landfried's opinions, *see id.* at 29-30, instead crediting the then-stale opinion of Dr. Miller.  And that error was particularly troublesome given that Dr. Landfried was a treating source and therefore best able to "provide . . . detailed, longitudinal picture[s] of [Meiers's] medical impairments."  *See* 20 C.F.R. §§ 416.913(a)(2015), 416.927(c)(2) (2015); *see also Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (summary order).  In fact, a treating source's opinion is entitled to "controlling weight" so long as it is "well-supported [sic] by medically acceptable clinical and laboratory diagnostic techniques and [ ] not inconsistent with the other substantial evidence in [the claimant's] case record."[2]  *Id.*; *see also Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (summary order).

---

[2] An ALJ may not give a treating source's opinion anything less than controlling weight unless he first "explicitly consider[s], *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and[ ] (4) whether the physician is a specialist."  *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quotations and alterations omitted).  "An ALJ's failure to 'explicitly' apply [these] factors [before] assigning [less-than-controlling] weight" to a treating source opinion "is a procedural error."  *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam)).  Because the ALJ did not do that here, he may have erred in that respect as well.  The plaintiff did not raise that issue, however, and so the Court does not decide it.

Moreover, the ALJ's lay determinations about the significance of Meiers's being able to perform some daily activities and engage in outdoor hobbies do not and cannot remedy the error. *Cf. Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("In the absence of a medical opinion to support [an] ALJ's finding as to [a claimant's] ability to perform [a certain level of] work, it is well-settled that the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.  While an ALJ is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who submitted an opinion to or testified before him." (citation and original alterations omitted)); *Shaw v. Chater*, 221 F.3d 126, 135 (2d Cir. 2000) ("[W]hile a physician's opinion might contain inconsistencies and be subject to attack, 'a circumstantial critique by non-physicians, however thorough or responsible, must be overwhelmingly compelling in order to overcome a medical opinion.'" (quoting *Wagner v. Sec. of Health & Human Servs.*, 906 F.2d 856, 862 (2d Cir. 1990)).  "[A]s a lay person, the ALJ simply was not in a position to know whether" Meiers's ability to do certain activities "would in fact preclude the disabling [limitations]."  *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).  Rather, the ALJ should have sought clarification from treating physicians, or obtained other medical opinions, about whether Meiers's ability to participate in daily activities contradicted the physical limitations advanced by Dr. Landfried.  *See* Docket Item 7 at 30.

In short, because the opinion of the consulting physician was stale by the time the ALJ rendered his decision, the ALJ erred in giving "great weight" to that opinion.  And the ALJ's lay opinion about what Meiers could do did not correct the error.  The Court therefore remands the matter to the Commissioner for reconsideration of Meiers's physical RFC.

6

**2. Mental RFC**

In October 2015, Dr. Ippolito opined that Meiers had no "psychiatric problems that would significantly interfere with [her] ability to function on a daily basis." *See* Docket Item 7 at 392. In determining Meiers's mental RFC, the ALJ gave "great weight" to Dr. Ippolito's opinion, finding that Dr. Ippolito's "familiarity with the [Social Security r]egulations and personal examination of the claimant increase[d] the persuasiveness of the opinion." *Id.* at 29. The ALJ also noted the consistency of Dr. Ippolito's opinion with the record as a whole, including the plaintiff's "often noted normal mental status . . . and the extent of her daily activities," which constituted evidence that she could perform "simple, unskilled work with occasional interaction with the public." *Id.* at 29.

Because the ALJ ignored significant deterioration in Meiers's mental health that occurred after Dr. Ippolito's examination, however, the ALJ again erred in relying on a stale opinion and reached an RFC that was not supported by substantial evidence. *See Welsh v. Colvin*, 2016 WL 836081, at *12 (W.D.N.Y. Mar. 4, 2016) (finding that consulting psychologist's opinion, "rendered . . . prior to the significant deterioration of [the claimant's] mental status"—as evidenced by three hospitalizations over a six-month period— "cannot constitute substantial evidence supporting the ALJ's determination"). Indeed, Meiers's mental health issues worsened significantly after Dr. Ippolito's exam and opinion in 2015.

In December 2016, Meiers was admitted to a mental health hospital for erratic behavior. *See* Docket Item 7 at 433. Some symptoms, such as "hearing voices," were medically explained as being the result of low electrolytes, but psychologist Gary Dinezza, Ph.D., diagnosed Meiers later in her stay with schizoaffective disorder, bipolar type. *See id.* at 433, 435. And after her discharge, Meiers continued to receive mental

health counseling from Amanda Florian, M.S.W.  *Id.* at 932-76.  All that rendered Dr. Ippolito's opinion stale.

Counselor Florian treated Meiers from January to August of 2017.  *Id.* at 932-76.  In her notes from July 11, 2017, she described Meiers's mental health issues as including "poor judgment" and an "extreme" impairment in her ability "to work" and maintain "financial solvency."  *Id.* at 971.  Contributing to those issues were Meiers's "intense" affect and "anxious" mood.  *Id.* at 949.  On April 5, 2017, Counselor Florian opined that Meiers could maintain only part-time employment.  *Id.* at 961.

The ALJ gave Counselor Florian's opinion "little weight" because she was "not an acceptable medical source."  *Id.* at 29.  And the ALJ was correct in noting that therapists are considered "other source[s]," *see* 20 C.F.R. § 416.913(d)(1) (2015), whose opinions cannot "establish the existence of a medically determinable impairment."  *See* Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims, 71 Fed. Reg. 45,593, 45,596 (Aug. 9, 2006).  Nevertheless, an opinion from a therapist still can "outweigh the opinion of an 'acceptable medical source[ ]' . . . [if, f]or example, . . . [the source] has seen the individual more often . . . and has provided better supporting evidence and a better explanation for his or her opinion."  *Id.*  That is the case here.

What is more, the Second Circuit has "cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination," a "concern [that] is even more pronounced in the context of mental illness where . . . a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health."  *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019) (first quoting *Selian v. Astrue*, 708

F.3d 409, 419 (2d Cir. 2013) (per curiam)); *see also id.* at 97 (explaining that because "[c]ycles of improvement and debilitating symptoms [of mental illness] are a common occurrence, . . . it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is [not disabled]" (second alteration in original) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014))). Meiers testified before the ALJ that over the course of her treatment with Counselor Florian, she had "good days" and "bad days." *See* Docket Item 7 at 60. Cherry-picking the good days and ignoring the bad was error.

Because Dr. Ippolito's opinion was rendered before a significant deterioration in Meiers's mental health, and because the one-time examination did not appreciate the cycles of improvement and debilitation that Meiers had experienced, the ALJ erred in relying on the stale opinion of the one-time consulting psychologist. This Court therefore remands the matter to the Commissioner for reconsideration of Meiers's mental RFC as well.

## **CONCLUSION**

In sum, the Court remands the matter for reconsideration of Meiers's physical and mental RFC. The Court "will not reach the remaining issues raised by [Meiers] because they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Bonet ex rel. T.B. v. Colvin*, 2015 WL 729707, at *7 (N.D.N.Y. Feb. 18, 2015) ("Given the need to apply the proper legal standard, the Court will decline at this time to consider whether substantial evidence exists to support the findings the ALJ made."). But on remand, the ALJ should ensure that any specific RFC limitations are based on specific medical evidence in the

record, not on the ALJ's "own surmise."  *See Cosnyka v. Colvin*, 576 F. App'x 43, 46 (2d Cir. 2014) (summary order).

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 15, is DENIED, and Meiers's motion for judgment on the pleadings, Docket Item 11, is GRANTED in part and DENIED in part.  The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: July 14, 2020
Buffalo, New York

 */s/ Hon. Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE